McFarland, J.,
delivered the opinion of the court.
This action was brought in the .Circuit Court of Memphis by Isabella Walsh and Julius Walsh against R. P. Walt & Co. and J. F. Hicks, upon two notes made at St. Louis, Missouri, on the 3rd of July, 1866, by R. P. Walt & Co., payable to J. F. Hicks, and by Hicks endorsed to the plaintiffs as administrators of the estate of Edward Walsh, deceased. The defendants pleaded among other things that the notes sued on were given in part consideration of the purchase, by the defendants from the plaintiffs, of a three-fourths interest in the steamboat “Yon Phul;” that the plain *316 tiffs, as administrators of Edward Walsh’s estate, owned the entire boat, and sold the three-fourths interest to the defendants, reserving to themselves the other fourth interest, and that in running the boat afterwards as a Mississippi Packet very heavy losses were sustained, one-fourth of which it is claimed should be borne by the plaintiffs, and be offset against the notes sued upon. In reply to this, the plaintiffs say that Edward Walsh, their intestate,, only owned three-fourths of said boat, and that in selling three-fourths thereof to the defendants they sold their entire interest, and afterwards had no further interest in the boat, and. were consequently in no way bound for the losses afterward sustained, and that the other fourth of said boat was owned by the estate of Patrick Gorman. Upon this there was issue; upon the trial there was verdict and judgment for the plaintiffs. A new trial being refused, the defendants have appealed in error.
The first error relied upon is that the plaintiffs below declare in their representative character as administrators of the estate of Edward Walsh, deceased, but do not make profert of their letters of administration, or aver that any have been issued.
If letters of administration in Tennessee were necessary in the state of the pleadings, this question oould not now be made, but administration in Tennessee was not necessary. The plaintiffs sue upon a contract made with themselves, and not upon a right that had accrued to their intestate. The contract was made with them after the death of their intestate, and the notes were endorsed to them. It is true *317 in the endorsement they are called administrators of tbe estate of Edward Walsh, deceased, and in the summons and declaration they are so named, but this was unnecessary, and may be regarded merely as discriptive of the persons, and rejected. Page v. Cravens, 3 Head, 383; 2 Greenleaf, sec. 383; 8 Hum., 19.
The error mainly relied upon is, that the court below refused a continuance of the cause upon the application of the defendants, supported' by the affidavit of Martin Walt one of the defendants. This affidavit, in substance, states that defendants could not safely go to trial without the testimony of Joseph Bonfell, who had been duly summoned, and was absent without the consent or procurement of the defendants; that the defendants could prove by him that they were entitled to a credit of $7,239.59, with 'interest upon the notes sued upon as shown by his account exhibited with their pleas, (the account of losses); that said Bonfell was -clerk of the steamer “Von Phul”; that they knew of no one by whom the same fácts could be proven; that he had been in attendance to give his evidence until within the last few days, he left without their knowledge, to go up the river to St. Louis or some other point.
The record shows that when this application was made the plaintiffs below offered to read as counter affidavits, the depositions of two witnesses that were on' file, with a number of exhibits, and that the substance of this testimony was stated to the court. It does not appear distinctly whether the court considered this evidence in determining its action or not — the *318 continuance was refused. This was the first application for a continuance, being the first time the cause was reached. The cause was put at issue in October, 1867, and tried in June, 1869.
It is well settled that the granting of a continuance is a matter addressed to the sound discretion of the inferior court. As to the practice of hearing counter affidavits we express no opinion, this case, as we think, not requiring it. But it is certainly proper for the court to hear enough of the record, and of the nature of the controversy, to enable him to see and determine the importance of the testimony, as well as to determine whether the party has been guilty of negligence in obtaining it. In the case of Todd v. Wiley, 3 Hum., 577, this court said: “The propriety of granting or refusing a continuance must depend upon a variety of circumstances, of which this court cannot so well judge as can the court to whom the application is made, and this court would be, slow to control the exercise of discretion of the court below in such cases. To induce this court to interfere, the facts should show a clear case of erroneous exercise of discretion." But in proper cases, this court will grant new trials upon this ground. In Bellew v. The State, 5 Hum., 567, upon this question this court said: “We have repeatedly said that we interfere with the judgments of inferior courts with reluctance, upon matters of practice or things involving an exercise of legal discretion, and that we will never do so except in cases of palpable mistake, without the correction of which injustice must necessarily be done.” That *319 was a criminal case, and the rule should certainly be as strong in favor of the correctness of the action of the court below in civil cases. Waiving any criticism upon the language of the affidavit in this cause, can we see that there has been an erroneous exercise of discretion in refusing the continuance? Has injustice been done? The defense to be established by the absent witness was the set-off claimed in the defendants’ plea. This was predicated upon the assumption that, after the execution of the notes sued upon, the plaintiffs and defendants were the joint owners of the steamer “Von Phul,” and consequently jointly liable for her losses. The defendants proposed to prove by the absent witness, who had been the clerk of the boat, and to whom only the fact' was known, that they were entitled to this credit, as shown in an account of the losses made out by said clerk and filed with their plea. Apparently, the statements of this affidavit are very strong and would, doubtless, in most cases be considered sufficient for a continuance, but there was on file, and this record shows, evidence that in fact, the plaintiffs only owned three-fourths of the boat, and the estate of Gorman owned the other fourth ; and that after the sale to the defendants the plaintiffs had no interest whatever in the boat. This evidence is of the most convincing character, besides the testimony of two witnesses who prove the facts with great distinctness and particularity, are the enrollments in the custom house at St. Louis, in accordance with the Acts of Congress, in the first of which it is shown, among other things, that Patrick Gorman made oath *320 that he was the owner of one-fourth of the boat,, and Edward Walsh of .the other three-fourths. A similar enrollment, made after the death of Patrick Gorman, shows that Daniel Walsh made oath that he, as administrator of Gorman’s estate, was the owner of one-fourth, and Edward Walsh was the owner of the other three-fourths of the. boat. After the purchase by the defendants, on the 5th of September, 1866, another enrollment is made in which it is shown that J. F. Hicks, of Memphis, Tennessee, (one of the defendants) having taken and subscribed the oath required by the said Act, and having sworn that he, together with Martin Walt and Rufus P. Walt, composing the firm of R. P. Walt & Co., of Memphis, Tennessee, are owners of three-fourths of the steamer herein named, and Dan. Walsh of St. Louis, administrator of Patrick Gorman, deceased, late of St. Louis, owned one-fourth, etc. Again a bill of sale, executed by the plaintiffs to the defendants, shows that the plaintiffs owned three-fourths of the boat, which they sold to defendants, and that Gorman’s estate was the owner of the other fourth. In addition to all this we have a deed of trust executed under the hand and seal of the defendants, upon their interest in the boat, to secure the notes sued upon, in which the same facts are fully shown. In the face of all this, of what possible avail, to the defendants, could the testimony of JBonfell have been. It is impossible that his testimony could have overthrown the evidence above set forth, even if the defendants were not absolutely estopped by their own acts, from attempting to show a differ *321 ent state of facts as to the ownership of the boat, from what appears by their own solemn admission and by the sworn statement of one of them. In this view, the affidavit of Walt for a continuance could mean nothing more than that the witness would prove the correctness of the losses as shown in his account, and this in the face of the other proof could have availed the defendants nothing. It can not be said that the defendants expected to prove a different state of facts as to the ownership of the boat, and that Bonfell was the only witness who knew the fact. As to the further statement in the affidavit, that he could prove by Bonfell that Julius Walsh had agreed with defendant, in consideration of the surrender of certain policies of insurance, to allow the credits, the affidavit shows upon its face that the defendants themselves were cognizant of this fact, and they were competent witnesses to prove it. The trial was in June, 1869. See Act March 13, 1868; Act 1867-8, p. 94; Act December 17, 1868; Act 1868-9, p. 7.
We can not see that injustice has been done the defendants, or that the discretion of the court was improperly exercised. The question as to the stamp was correctly settled. See 1 Heis., 633. As to the additional plea on file, this was, as we have seen, wholly immaterial, and besides was abandoned by the defendants.
Affirm the judgment.